The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Edward Garner, Jr. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and defendant-employer.
3. St. Paul Fire and Marine Insurance Company was the compensation carrier on the risk.
4. Plaintiff's average weekly wage as set forth on the Form 22 Wage Chart is $615.44, which yields a compensation rate of $410.31 per week.
5. Plaintiff suffered an incident on December 11, 1993, which plaintiff alleges a back injury resulted therefrom.
6. The defendant-employer admits the incident, but it denies plaintiff suffered an injury.
7. The issue to be determined by the Commission is whether plaintiff suffered an injury to his back as a result of this incident of December 11, 1993.
* * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. On December 11, 1993 plaintiff suffered an injury by accident in the course and scope of his employment when he was struck in the back by a part of the "shell-core" machine.
2. The medical records of Dr. Thomas Friedrich, who saw plaintiff on December 13, 1993, obtained a history consistent with the plaintiff's hearing testimony, and reflect the presence of abrasions on the plaintiff's lower back.
3. The medical records of Dr. Mark Monnin, who saw plaintiff on December 20, 1993, and who also obtained a history consistent with the plaintiff's testimony, reflect abrasions on the plaintiff's lower back.
4. The deposition testimony and February 8, 1994 records of Dr. Joanne Pizzino, where again a correspondence history was obtained, show presence of a scar on the lower back.
5. According to the medical records, Dr. Friedrich's diagnosis was lumbar strain caused by the December 11, 1993 accident. Dr. Friedrich's office note further states, "(H)e really cannot go back to work at least until he starts to improve."
6. According to his medical records and out-of-work slips, Dr. Monnin's diagnosis was also lumbar sprain/strain. Dr. Monnin's out-of-work slips indicate that the plaintiff should be excused from work during the periods December 20-27, 1993 and January 7-17, 1994. The employer-defendant's attendance record shows excused absences for the weekdays between January 17-31 as well.
7. Dr. Monnin's out-of-work slips indicate that the plaintiff was released to return to light duty (no lifting over 40 pounds) on January 31, 1994. The plaintiff returned to work on February 1, 1994, and continued to work until he was seen by Dr. Pizzino on February 8, 1994.
8. Dr. Pizzino is of the opinion that the December 11, 1993 accident caused the symptoms for which she treated plaintiff. As indicated in Dr. Pizzino's records she took plaintiff out of work on February 8 and kept him out of work until March 1, when she released him to return to light work with no lifting over ten pounds and no bending or twisting. According to Dr. Pizzino's testimony and March 28, 1994 office note, the employer-defendant would not allow the plaintiff to return to work until he was "100%."
9. Dr. Pizzino's April 12, 1994 office note shows that the plaintiff was released to return to full duty as of April 18, 1994. The employer-defendant's attendance records indicate that the plaintiff returned to work at that point, and continued to work until May 9, 1994.
10. The plaintiff returned to Dr. Pizzino on May 11, 1994 complaining that his work activity was increasing his back pain. Dr. Pizzino recommended that his work be limited to light duty with no lifting over 25 pounds and no bending over three times per hour. She further recommended that the plaintiff have a comprehensive rehabilitation program.
11. As shown in the medical records, the plaintiff entered the care of Dr. Larry Maugel on May 12, 1994. Dr. Maugel did not lift or increase Dr. Pizzino's work restrictions, and on May 24, 1994 recommended that plaintiff be excused from work for the period May 2 through June 12, 1994. Dr. Maugel concurred with Dr. Pizzino's referral to The Rehab Center.
12. The medical records show that the plaintiff entered the care of The Rehab Center on June 9, 1994 and continued to be treated there until July 20, 1994. The discharge summary indicates that, upon completion of the program, the plaintiff was limited to lifting up to 35 pounds occasionally and up to 20 pounds frequently, with no repetitive bending or twisting at the waist and no standing, walking or sitting for more than one hour intervals.
13. The plaintiff did not attempt to return to work for the employer-defendant at that point because he feared the employer-defendant would not accept his restrictions, and would force him into duties beyond his ability. The plaintiff's concern on this point is corroborated by Dr. Pizzino's testimony that the employer did not want the plaintiff back until he was "100%." It is further corroborated by the May 11, 1994 entry in Dr. Pizzino's office note, where plaintiff complained that the employer gave him "an extremely hard job when he went back . . . to try to force him to leave," as well as by the August 25, 1994 entry in Dr. Maugel's notes, where it is noted that plaintiff "feels that the work restrictions will not be accepted."
14. The plaintiff has found work finishing Sheetrock, although at a lesser wage than he had earned working for employer-defendant.
15. As shown in the medical records from The Rehab Center the plaintiff continued to have significant limitations in functional capacity after completing a comprehensive rehabilitation program.
16. The plaintiff has not yet received a permanent partial disability rating. Further, he returned to work in the Sheetrock finishing job just shortly before the November 15, 1994 hearing, so that a comparison of his average earnings in that job with his average weekly wage at the time of injury could not be meaningfully made.
* * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident on December 11, 1993, as a result of which there are compensable consequences. G.S. § 97-2(6).
2. Defendants shall pay for the treatment provided by Dr. Friedrich, Monnin, Pizzino, and Maugel, and by The Rehab Center after bills for the same have been submitted to the carrier. G.S. § 97-25.
3. Defendants shall pay temporary total disability benefits to plaintiff at the rate of $410.31 per week from December 12, 1993, through the date when plaintiff returned to work finishing Sheetrock, which was October 18, 1994, less the period from February 1-8, 1994, and April 18 through May 8, 1994, when plaintiff returned to work for the employer-defendant. G.S. § 97-29.
4. Plaintiff shall return to Dr. Pizzino for a permanent partial disability rating. G.S. § 97-25; G.S. § 97-31.
5. The question of compensation under G.S. § 97-30 or G.S. § 97-31 may be determined through a subsequent hearing, if the parties cannot reach agreement on that issue, and is hereby deferred at this time.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay temporary total disability benefits to plaintiff at the rate of $410.31 per week from December 12, 1993 through October 18, 1994, less the period from February 1-8, 1994, and April 18 through May 8, 1994, when plaintiff returned to work for the defendant employer. This compensation has accrued and shall be paid to plaintiff in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of the injury by accident when bills for the same have been submitted to the carrier.
3. Plaintiff shall return to Dr. Pizzino for a permanent partial disability rating.
4. An attorney's fee in the amount of twenty-five (25) percent of the award is hereby approved for plaintiff's counsel. Said amount shall be deducted from the aforesaid award and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs due the Commission.
6. Plaintiff's motion for attorney's fees under N.C.G.S.97-88 is DENIED.
 S/ _________________________________ COY M. VANCE COMMISSIONER
CONCURRING: S/ ____________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ____________________________ LAURA K. MAVRETIC COMMISSIONER
CMV/cnp/mj 9/13/95